Slip Op. 06-42

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                              :
HONTEX ENTERPRISES, INC.,     :
D/B/A LOUISIANA PACKING CO.,  :
                              :
          Plaintiff,          :
                              :
     v.                       :
                              : Before: Richard K. Eaton, Judge
UNITED STATES,                :
                              :
          Defendant,          : Court No. 00-00223
                              :
     and                      :
                              :
CRAWFISH PROCESSORS ALLIANCE, :
THE LOUISIANA DEPARTMENT OF   :
AGRICULTURE AND FORESTRY,     :
AND BOB ODOM, COMMISSIONER,   :
                              :
          Def.-Ints.          :
_____
```

MEMORANDUM OPINION AND JUDGMENT

Dated: April 3, 2006

[United States Department of Commerce's Conclusion in the Final Results on Remand, affirmed]

*Arent Fox Kintner Plotkin & Kahn, PLLC* (*John M. Gurley*), for plaintiff.

*Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Jeanne E. Davidson*, Deputy Director, International Trade Section, Commercial Litigation Branch, Civil Division, United States Department of Justice (*David S. Silverbrand* and *Paul D. Kovac*); United States Department of Commerce, Office of Chief Counsel for Import

Administration (*Marisa Beth Goldstein*), of counsel, for
defendant.

   *Adduci, Mastriani & Schaumberg, LLP* (*James Taylor, Jr.* and
*John C. Steinberger*), for defendant-intervenors.


   Eaton, Judge: This antidumping action is before the court
following a third remand to the United States Department of
Commerce ("Commerce" or the "Department").  *See* Final Results
of Determination Pursuant to Court Remand (Dep't Commerce, Dec.
9, 2005) ("Final Results on Remand").  *See generally Hontex
Enter., Inc. v. United States*, 29 CIT __, 387 F. Supp. 2d 1353
(2005) ("*Hontex III*").  Jurisdiction is had pursuant to 28
U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(a)(2)(B)(iii)
(2000).  For the reasons set forth below, the court affirms the
"Conclusion" found in the Final Results on Remand.


BACKGROUND

   The facts of this case have been set forth in the previous
opinions of the court.  *See Hontex III*, 29 CIT at __, 387 F.
Supp. 2d at 1355-57*; Hontex Enter., Inc. v. United States*, 28
CIT  __, __, 342 F. Supp. 2d 1225, 1226-28 (2004) ("*Hontex
II*"); *Hontex Enter., Inc. v. United States*, 27 CIT __, __, 248
F. Supp. 2d 1323, 1325-28 (2003) ("*Hontex I*").  The facts
relevant to the instant remand review are as follows.

On October 29, 1998, Commerce initiated an administrative review of the antidumping duty order covering crawfish tail meat from the People's Republic of China ("PRC").  *See* Initiation of Antidumping and Countervailing Duty Admin. Review, Requests for Revocation in Part and Deferral of Admin. Review, 63 Fed. Reg. 58,009 (ITA Oct. 29, 1998).  During that review, exporters Ningbo Nanlian Frozen Foods Company ("NNL")[1] and Huaiyin Foreign Trading Company (5) ("HFTC5") submitted questionnaire responses.  *See*, *e.g.*, Sec. A Questionnaire Resp. of [NNL] and La. Packing Co. ("NNL Sec. A Resp."), Pub. R. Doc. 19 (Dec. 8, 1998); Sec. A Questionnaire Resp. of [HFTC5] ("HFTC5 Sec. A Resp."), Pub. R. Doc. 24 (Dec. 22, 1998).  In their responses, both NNL and HFTC5 maintained that they shared neither managers or owners, nor common control, with other crawfish tail meat exporters.  *See* NNL Sec. A Resp., Pub. R. Doc. 19 at 3; HFTC5 Sec. A Resp., Pub. R. Doc. 24 at 4. Despite this assertion, Commerce determined that a "web of control relationships [existed] between NNL and HFTC5," and that the two entities were affiliated and therefore should be "collapsed" and treated as a single entity.  *See Hontex III*, 29 CIT at __, 387 F. Supp. 2d at 1355-56 (citing  Relationship of

---

[1]     It should be noted that a "Mr. Lee" is the part-owner of NNL. *See* Verification Report for [NNL] in the Antidumping Duty Review of Freshwater Crawfish Tail Meat from the PRC, Pub. R. Doc. 188 at 5-10.  He has, however, no ownership interest in HFTC5.

[NNL] and [HFTC5], Pub. R. Doc. 218).  Based on this finding, Commerce assigned HFTC5's PRC-wide antidumping duty rate of 201.63% to NNL.  *Id.*  Although claiming a "web of control relationships," Commerce's determination was based solely on the business activities of a "Mr. Wei,"[2] who was at various times an employee of each company. *Id.*

As a domestic importer of the subject merchandise, plaintiff Hontex commenced this action challenging aspects of Commerce's determinations, including Commerce's decision to collapse the companies.[3]  *See generally Hontex I.*  The matter was ultimately remanded in *Hontex I,* and further re-determinations and remands followed thereafter. *See generally Hontex II*, *and Hontex III*.

In *Hontex I, Hontex II*, and *Hontex III,* this court found, *inter alia*, that substantial record evidence did not support Commerce's determination that NNL and HFTC5 should be collapsed.  *See Hontex III*, 29 CIT at __, 387 F. Supp. 2d at

---

[2]      Also known as "Mr. Wei Wei."

[3]      As a domestic importer of the subject merchandise, Hontex is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A), and is entitled to challenge Commerce's determination pursuant to 19 U.S.C. § 1516(a)(2).

1359; *Hontex II*, 28 CIT at __, 342 F. Supp. 2d at 1236-37;

*Hontex I,* 27 CIT at __, 248 F. Supp. 2d at 1343-44.  As a

result, the court, in each instance, remanded the matter so

that Commerce might marshal more evidence to support its

conclusion.  *See Hontex III*, 29 CIT at __, 387 F. Supp. 2d at

1361; *Hontex II*, 28 CIT at __, 342 F. Supp. 2d at 1246; *Hontex*

*I,* 27 CIT at __, 248 F. Supp. 2d at 1350.


                       STANDARD OF REVIEW

     When reviewing a final determination in an antidumping or

countervailing duty investigation, "[t]he court shall hold

unlawful any determination, finding, or conclusion found . . .

to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law . . . ."  19 U.S.C. §

1516a(b)(1)(B)(i).  "Substantial evidence is 'such relevant

evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  *Huaiyin Foreign Trade Corp. (30) v.*

*United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"Substantial evidence is more than a mere scintilla."  *Consol.*

*Edison*, 305 U.S. at 229.  The existence of substantial evidence

is determined "by considering the record as a whole, including

evidence that supports as well as evidence that 'fairly

detracts from the substantiality of the evidence.'" *Huaiyin*,

322 F.3d at 1374 (quoting *Atl. Sugar, Ltd. v. United States*,

744 F.2d 1556, 1562 (Fed. Cir. 1984)).


DISCUSSION

As noted by the court in *Hontex III,* the theory in support

of collapsing NNL and HFTC5, to that time, had not been

"entirely clear."  *See Hontex III*, 29 CIT at __, 387 F. Supp.

2d at 1358.  At oral argument, however, counsel for Commerce

explained the Department's position: "Mr. Wei Wei had the

potential to control both companies and . . . Mr. Wei Wei is an

agent of Mr. Lee.  Therefore, if you follow the logic . . . Mr.

Lee would have a potential to control both companies through

Mr. Wei Wei."  Oral Arg. Tr. of 3/30/2005 at 33.  Based on this

representation, the court in *Hontex III* reexamined the evidence

and concluded that nothing on the record indicated that Mr. Wei

was acting as Mr. Lee's agent at HFTC5.[4]  *See Hontex III*, 29

CIT at __, 387 F. Supp. 2d at 1360-61.  Specifically, the court

found that:

---

[4]     The only evidence of anyone having control over Mr.
Wei's activities at HFTC5 is that he took orders from an
individual identified solely as HFTC5's "general manager."  There
is no evidence, or even a suggestion, that Mr. Lee was HFTC5's
general manager.  *See Hontex III*, 29 CIT at __, 387 F. Supp. 2d at
1360.

An examination of the record reveals that there is neither: (1) evidence of Mr. Lee ever actually exercising control over Mr. Wei at HFTC5; nor (2) any evidence of Mr. Lee's potential to control Mr. Wei's activities at that company. Indeed, while Commerce provides great detail as to Mr. Wei's activities on behalf of HFTC5, none of this evidence links Mr. Lee to Mr. Wei's activities at that company. *See*, *e.g.*, NNL Verification Memo, Pub. R. Doc. 188 at 5-7. . . . [C]ounsel's comments at oral argument highlight the flaw in Commerce's reasoning: there is simply no evidence on the record of this antidumping review that Mr. Wei was acting as Mr. Lee's "agent" at HFTC5. While there is ample evidence that Mr. Lee was acquainted with Mr. Wei and that Mr. Wei was working as Mr. Lee's "agent" at NNL, this evidence does not support a further inference that Mr. Wei was working as Mr. Lee's "agent" at HFTC5. Therefore, substantial evidence does not support the conclusion that Mr. Lee "controlled" HFTC5.

*Id.* at 1360-61.

That being the case, the court remanded the matter to Commerce with instructions to either:

(1)(a) find that Mr. Lee did not control HFTC5 within the meaning of 19 U.S.C. § 1677(33)(F) & (G), and (b) find that NNL and HFTC5 were not affiliated, and (c) find that NNL and HFTC5 should not be collapsed and given a single antidumping margin, and (d) find that NNL is entitled to a separate company-specific antidumping margin and calculate that margin using the verified information on the record; or (2)(a) re-open the record in order to gather additional evidence of Mr. Lee's control

> relationship with HFTC5 during the period
> of review, and (b) place such additional
> information on the record, and (c) conduct
> an analysis that takes into account any
> such new evidence, including the temporal
> aspect of any such new evidence.

*Id*. at 1361.  Thus, Commerce was given the choice of two

courses of action, i.e., either find that the companies were

not affiliated or reopen the record.  The Final Results on

Remand, however, demonstrate that it chose neither.  Rather,

while Commerce states in its Conclusion, that it has now found

that: (1) Mr. Lee did not control HFTC5; (2) NNL and HFTC5 were

not affiliated and therefore should not be collapsed; and (3)

NNL is entitled to a separate company-specific antidumping

margin, and calculated that margin using the verified record

information, it further states that this determination is made

only "for the purpose of these remand results."  Final Results

on Remand at 2.  This statement is followed by extensive

argument justifying its previous conclusion that the companies

should be collapsed.  In sum, Commerce argues that collapsing

the companies was authorized because Mr. Wei was an employee of

both companies.  This position is, of course, different from

that presented by the Department's counsel in open court.

Moreover, although Mr. Wei was an employee of NNL, there is no

evidence that he in any way controlled the company since, at

all times, his NNL activities were directed by Mr. Lee.[5]


As to the nature of the Final Results on Remand, the course of action adopted by Commerce is simply not in accordance with this court's remand instructions.  "Neither of the[] choices on remand permit Commerce to affect to adopt the court's conclusions . . . without actually doing so."  *Fuyao Glass Indus. Group Co. v. United States*, 30 CIT __, __, slip op. 06-21 at 7 (Feb. 15, 2006) (not published in the Federal Supplement); *see also Vertex Int'l, Inc. v. United States*, 30 CIT __, slip op. 06-35 at 1 (Mar. 8, 2006) ("The Department must adhere closely to the court's outstanding orders.  Failure to do so unnecessarily absorbs the time of counsel and the court, [and] does not promote respect for the rule of law. . . .").  Therefore, the court finds the Summary and Discussion sections of the Final Results on Remand are not in accordance with the remand instructions.  As a result, those portions of the Final Results on Remand are to be stricken.


Nonetheless, as has been demonstrated by the court's discussion herein, Commerce's Conclusion is supported by

---

[5]     It is worth noting that Mr. Wei had no ownership interest in either company.

substantial evidence and otherwise in accordance with law.  As a result, that portion of the Final Results on Remand shall be affirmed.

JUDGMENT

Therefore, in accordance with the foregoing discussion, the court hereby: (1) strikes from the Final Results on Remand the portions labeled "Summary" and "Discussion" as inconsistent with the remand instructions found in *Hontex III*; and (2) affirms Commerce's Conclusion found in the Final Results on Remand as being supported by substantial evidence and otherwise in accordance with law.

/s/ Richard K. Eaton
_____
Richard K. Eaton

Dated: April 3, 2006
       New York, New York